BERMAN, J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/29/11
```

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

J.P. MORGAN SECURITIES LLC (f/k/a J.P. MORGAN SECURITIES INC.)

    Defendant.

11-CV- 4206 (RMB)

## FINAL JUDGMENT AS TO DEFENDANT J.P. MORGAN SECURITIES LLC

The Securities and Exchange Commission having filed a Complaint and Defendant J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.) ("Defendant" or "J.P. Morgan Securities") having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Sections 17(a)(2) and (3) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)(2) and (3)], in the offer or sale

of any security or security-based swap agreement, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly: (a) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (b) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant disgorge $18,600,000, together with prejudgment interest thereon in the amount of $2,000,000, and pay a civil penalty in the amount of $133,000,000 pursuant to Section 20(d)(2) of the Securities Act [15 U.S.C. §77t(d)(2)]. Within fourteen (14) days after entry of this final judgment, Defendant shall satisfy this obligation by: (i) making $125,869,721 in payments to and for the benefit of the Mezzanine Investors who purchased the Notes of Squared CDO 2007-1 on the closing date in amounts determined by the Commission pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002; and (ii) making a payment of $27,730,279 by wire transfer, certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission and delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312. All payments shall be accompanied by a letter identifying J.P. Morgan Securities as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying

that payment is made pursuant to this Final Judgment. Defendant shall simultaneously transmit photocopies of such payments and letters to the Commission's counsel in this action. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. §1961. The Commission shall remit the funds paid pursuant to subsection (ii) of this paragraph to the United States Treasury.

Amounts ordered to be paid as civil penalties pursuant to this Final Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that it is entitled to, nor shall it further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Final Judgment. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall comply with the following undertakings, which shall expire three (3) years from the entry of this Final Judgment:

    (a)    Product Review and Approval

The role of the relevant underwriting commitments committees (the "UCC") will be expanded to include all offerings of residential mortgage-related securities (other than agency RMBS), including collateralized debt obligations referencing such securities (collectively "mortgage securities") in which Defendant is the lead underwriter. The UCC shall ensure that processes are in place so that written marketing materials for such mortgage securities do not include any material misstatement or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

    (b)    Role of Internal Legal and Compliance

Defendant's Legal and Compliance Department will review (i) all written marketing materials used by Defendant in connection with mortgage securities offerings (i.e., term sheets, investor presentations or "flip books", and other non-prospectus marketing materials), (ii) all offering circulars/prospectuses used by Defendant in connection with mortgage securities offerings, where Defendant does not retain outside counsel to review such materials; and (iii) any written submissions to the UCC regarding such offerings. Defendant will establish a procedure for recording the occurrence of any such review, including the name of the Legal and Compliance Department employee who conducted the review, the date of the review and the particular materials that were reviewed.

4

(c)     Role of Outside Counsel

For all offerings of mortgage securities where Defendant is the lead underwriter and retains outside counsel to advise on the offering, such outside counsel will be asked to review all written marketing materials and offering circulars/prospectuses used in connection with the offering. To assist in this review, such outside counsel will be provided with all documents sufficient to reflect all material terms of the transaction.

(d)     Delivery of Offering Circulars/Prospectuses

Defendant will enhance its procedures regarding the delivery of offering circulars/prospectuses for mortgage securities offerings to ensure that such documents are delivered to investors, including establishing procedures for recording the investor's receipt of such documents or Defendant's compliance with applicable delivery rules.

(e)     Internal Audit

Defendant will conduct an internal audit review, on at least an annual basis, to determine that items (a), (b), (c) and (d) are being complied with. Any deficiencies noted by internal audit shall be promptly addressed by Defendant.

(f)     Education and Training

1.      For all employees of Defendant who are involved in the structuring or marketing of mortgage securities offerings, Defendant will provide training regarding the disclosure requirements of the federal securities laws and their application to the offering of mortgage securities within sixty (60) days of the employee's hire or internal transfer.

2.      Not less frequently than annually, all employees of Defendant who are involved in the structuring or marketing of mortgage securities offerings shall participate in a

training seminar that covers the disclosure requirements of the federal securities laws and their application to the offering of mortgage securities. The first training seminar shall take place not later than sixty (60) days following the date of the Final Judgment.

    3.    Defendant shall provide for appropriate record keeping to track compliance with these requirements.

    (g)    Certification of Compliance by Defendant

The General Counsel or the Global Head of Compliance of Defendant shall certify annually (one year, two years, and three years, respectively, after the date of entry of this Final Judgment), in writing, compliance in all material respects with the undertakings set forth above. The Commission staff may make reasonable requests for further evidence of compliance, and Defendant agrees to provide such evidence. The certification and any such additional materials shall be submitted to Kenneth R. Lench, Chief of the Structured and New Products Unit, with a copy to the Office of Chief Counsel of the Enforcement Division.

IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that based on Defendant's agreement to cooperate in this action and any related actions, the Court is not ordering Defendant to pay a civil penalty in excess of $133,000,000. Defendant's cooperation shall include those obligations set forth in Paragraph 17 of the Consent, including, but not limited to, producing non-privileged documents and other materials to the Commission as requested by the staff; requiring its employees to make themselves available for interviews at times and places reasonably requested by the staff; and requiring that employees testify at trial and other judicial proceedings when requested by the Commission's staff. If at any time following the entry of the

Final Judgment the Defendant knowingly provides materially false or misleading information or materials to the Commission in this action or in a related proceeding, or otherwise fails to comply in any material respect with its obligations pursuant to Paragraph 17 of the Consent, the Commission may, at its sole discretion with reasonable notice to the Defendant, petition the Court for an order requiring Defendant to pay an additional civil penalty. In connection with any such petition and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that it did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of this Final Judgment, the Consent, or any related Undertakings; (c) the allegations of the Complaint, solely for the purposes of such motion, shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. Under these circumstances, the parties may take discovery, including discovery from appropriate non-parties.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

Dated: __June 29, 2011__

__RMB__
UNITED STATES DISTRICT JUDGE

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____

8

JUDGE BERMAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

J.P. MORGAN SECURITIES LLC (F/K/A J.P. MORGAN SECURITIES INC.),

    Defendant.

11 CIV 4206

-11-CV-

**CONSENT OF DEFENDANT J.P. MORGAN SECURITIES LLC**

1.    Defendant J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.) ("Defendant" or "J.P. Morgan Securities") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.    Without admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

    (a)    permanently restrains and enjoins Defendant from violation of Sections 17(a)(2) and (3) of the Securities Act of 1933 [15 U.S.C. §77q(a)(2) and (3)];

    (b)    orders Defendant to pay disgorgement in the amount of $18,600,000, plus prejudgment interest thereon in the amount of $2,000,000;

1

  (c) orders Defendant to pay a civil penalty in the amount of $133,000,000 under Section 20(d)(2) of the Securities Act [15 U.S.C. §77t(d)(2)]; and

  (d) orders Defendant to comply with specified undertakings for three (3) years from the entry of the Final Judgment.

3. Defendant has conducted a review of the CDO transactions that were the subject of the Commission's investigation. Based upon that review, Defendant voluntarily made payments totaling $56,400,214 to certain investors in connection with a transaction known as Tahoma CDO I. Defendant has been advised by the Commission that no claims are being asserted with respect to Tahoma CDO I, but that Defendant's voluntary payments have been taken into account by the Commission in connection with the resolution of this matter.

4. Defendant acknowledges that the civil penalty paid pursuant to the Final Judgment may be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. Regardless of whether any such Fair Fund distribution is made, the civil penalty shall be treated as a penalty paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant agrees that it shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that it is entitled to, nor shall it further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant agrees that it shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be

2

deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this action. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the complaint in this action.

5. Defendant agrees that it shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Defendant further agrees that it shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

6. Defendant acknowledges that the Court is not imposing a civil penalty in excess of $133,000,000 based on Defendant's agreement to cooperate as set forth in Paragraph 17 below. Defendant consents that if at any time following the entry of the Final Judgment the Defendant does not comply in any material respect with its agreement to cooperate, the Commission may, at its sole discretion with reasonable notice to the Defendant, petition the Court for an order requiring Defendant to pay an additional civil penalty. In connection with the Commission's motion for civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that it did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Final Judgment, this Consent, or any related Undertakings; (c) the allegations of the Complaint, solely for the

3

purposes of such motion, shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. Under these circumstances, the parties may take discovery, including discovery from appropriate non-parties.

7. Defendant agrees to comply with the following undertakings, which shall expire three (3) years from the entry of the Final Judgment herein:

    (a) Product Review and Approval

The role of the relevant underwriting commitments committees (the "UCC") will be expanded to include all offerings of residential mortgage-related securities (other than agency RMBS), including collateralized debt obligations referencing such securities (collectively "mortgage securities") in which Defendant is the lead underwriter. The UCC shall ensure that processes are in place so that written marketing materials for such mortgage securities do not include any material misstatement or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

    (b) Role of Internal Legal and Compliance

Defendant's Legal and Compliance Department will review (i) all written marketing materials used by Defendant in connection with mortgage securities offerings (i.e., term sheets, investor presentations or "flip books", and other non-prospectus marketing materials), (ii) all offering circulars/prospectuses used by Defendant in connection with mortgage securities offerings, where Defendant does not retain outside counsel to review such materials; and (iii) any written submissions to the UCC regarding such offerings. Defendant will establish a procedure

4

for recording the occurrence of any such review, including the name of the Legal and Compliance Department employee who conducted the review, the date of the review and the particular materials that were reviewed.

    (c)    Role of Outside Counsel

For all offerings of mortgage securities where Defendant is the lead underwriter and retains outside counsel to advise on the offering, such outside counsel will be asked to review all written marketing materials and offering circulars/prospectuses used in connection with the offering. To assist in this review, such outside counsel will be provided with all documents sufficient to reflect all material terms of the transaction.

    (d)    Delivery of Offering Circulars/Prospectuses

Defendant will enhance its procedures regarding the delivery of offering circulars/prospectuses for mortgage securities offerings to ensure that such documents are delivered to investors, including establishing procedures for recording the investor's receipt of such documents or Defendant's compliance with applicable delivery rules.

    (e)    Internal Audit

Defendant will conduct an internal audit review, on at least an annual basis, to determine that items (a), (b), (c) and (d) are being complied with. Any deficiencies noted by internal audit shall be promptly addressed by Defendant.

    (f)    Education and Training

    1.    For all employees of Defendant who are involved in the structuring or marketing of mortgage securities offerings, Defendant will provide training regarding the disclosure requirements of the federal securities laws and their application to the offering of mortgage securities within sixty (60) days of the employee's hire or internal transfer.

2. Not less frequently than annually, all employees of Defendant who are involved in the structuring or marketing of mortgage securities offerings shall participate in a training seminar that covers the disclosure requirements of the federal securities laws and their application to the offering of mortgage securities. The first training seminar shall take place not later than sixty (60) days following the date of the Final Judgment.

3. Defendant shall provide for appropriate record keeping to track compliance with these requirements.

(g) Certification of Compliance by Defendant

The General Counsel or the Global Head of Compliance of Defendant shall certify annually (one year, two years, and three years, respectively, after the date of entry of this Final Judgment), in writing, compliance in all material respects with the undertakings set forth above. The Commission staff may make reasonable requests for further evidence of compliance, and Defendant agrees to provide such evidence. The certification and any such additional materials shall be submitted to Kenneth R. Lench, Chief of the Structured and New Products Unit, with a copy to the Office of Chief Counsel of the Enforcement Division.

8. Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

9. Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

10. Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

6

11. Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

12. Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

13. Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

14. Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any

disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that it shall not be permitted to contest the factual allegations of the complaint in this action.

15. Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

16. Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

17. In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to require its employees to make themselves available for interviews at such times and places reasonably requested by the Commission staff; (ii) agrees to require that its employees testify at trial and other judicial proceedings when requested by Commission staff; (iii) will produce non-privileged documents and other materials as requested by the Commission staff; (iv) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (v) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (vi) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (vii) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

18. Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

19. Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: June 17, 2011

J.P. Morgan Securities LLC

By: _____
Stephen M. Cutler
Executive Vice President and General Counsel
JPMorgan Chase & Co.
270 Park Avenue
New York, NY 10017

On June 17, 2011, Steven M. Cutler, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent with full authority to do so on behalf of J.P. Morgan Securities LLC as its Attorney-in-Fact

_____
Notary Public
Commission expires:

DEBORAH BADAGLIACCA
Notary Public, State of New York
No. 01BA6125179 Qualified in Westchester County
Certificate Filed in New York County
My Commission Expires April 11, 2013

Approved as to form:

_____
Herbert F. Janick III
Bingham McCutchen LLP
Exchange Street, Third Floor
Portland, ME 04101
(207) 780-8270

_____
John F. Savarese
Wachtell, Lipton, Rosen & Katz
51 West 52 Street
New York, NY 10019
(212) 403-1235

Attorneys for Defendant

10